UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NICOLE MICHELLE REED-BARNES,

    Plaintiff,                                              Civil Action No. 17-CV-12313

vs.                                                         HON. BERNARD A. FRIEDMAN

COMMISSIONER OF
SOCIAL SECURITY,

    Defendant.

_____/

## OPINION AND ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND REMANDING FOR FURTHER PROCEEDINGS

        This matter is presently before the Court on defendant's motion for summary judgment [docket entry 21]. Pursuant to E.D. Mich. LR 7.1(f)(2), the Court shall decide this motion without a hearing. For the reasons stated below, the Court shall deny defendant's motion and remand the matter for further proceedings.

        Plaintiff has brought this action under 42 U.S.C. § 405(g) to challenge defendant's decision denying her applications for Social Security disability insurance and Supplemental Security Income benefits. An Administrative Law Judge ("ALJ") held a hearing in January 2017 (Tr. 46-76) and issued a decision denying benefits in February 2017 (Tr. 25-41). This became defendant's final decision in May 2017 when the Appeals Council denied plaintiff's request for review (Tr. 1-3).

        Under § 405(g), the issue before the Court is whether defendant's decision is supported by substantial evidence. As the Sixth Circuit has explained, the Court

> must affirm the Commissioner's findings if they are supported by substantial evidence and the Commissioner employed the proper legal standard. *White*, 572 F.3d at 281 (citing 42 U.S.C. § 405(g)); *Elam ex rel. Golay v. Comm'r of Soc. Sec.*, 348 F.3d 124, 125 (6th Cir. 2003); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th

> Cir. 1997). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (internal quotation marks omitted); see also *Kyle*, 609 F.3d at 854 (quoting *Lindsley v. Comm'r of Soc. Sec.*, 560 F.3d 601, 604 (6th Cir. 2009)). Where the Commissioner's decision is supported by substantial evidence, it must be upheld even if the record might support a contrary conclusion. *Smith v. Sec'y of Health & Human Servs.*, 893 F.2d 106, 108 (6th Cir. 1989). However, a substantiality of evidence evaluation does not permit a selective reading of the record. "Substantiality of the evidence must be based upon the record taken as a whole. Substantial evidence is not simply some evidence, or even a great deal of evidence. Rather, the substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Garner v. Heckler*, 745 F.2d 383, 388 (6th Cir. 1984) (internal citations and quotation marks omitted).

*Brooks v. Comm'r of Soc. Sec.*, 531 F. App'x 636, 640-41 (6th Cir. 2013).

At the time of the ALJ's decision, plaintiff was 46 years old (Tr. 51). She has a high school education, some college, and work experience as a cleaner, medical assistant, automobile assembler, and forklift driver (Tr. 54-57, 278). Plaintiff claims she has been disabled since September 2015 due to Charcot feet,[1] pancreatitis, right hand numbness, depression, and asthma (Tr. 213).

The ALJ found that plaintiff's severe impairments are "degenerative joint disease, acute pancreatitis, obstructive sleep apnea, obesity, adjustment disorder, and major depressive disorder" (Tr. 30) and that her non-severe impairments are hypertension, congestive heart failure, edema, asthma, and hypothyroidism (Tr. 30-31). He found that plaintiff cannot perform any of her past work but that she has the residual functional capacity ("RFC") to perform a limited range of

---

[1] "Charcot foot is a deformity that results from nerve damage (neuropathy) in the foot or ankle." https://www.webmd.com/a-to-z-guides/charcot-foot (last visited Apr. 2, 2018).

sedentary work.[2] A vocational expert ("VE") testified in response to a hypothetical question that a person of plaintiff's age, education, and work experience, and who has this RFC, could perform certain unskilled, sedentary jobs such as bench assembler, inserter, or parts checker (Tr. 73). The ALJ cited this testimony to support his conclusion that work exists in significant numbers that plaintiff could perform (Tr. 40).

Having reviewed the administrative record and defendant's summary judgment motion, the Court concludes that the ALJ's decision is not supported by substantial evidence because his RFC evaluation of plaintiff is flawed. Since the ALJ's hypothetical question incorporated a flawed RFC evaluation, it failed to describe plaintiff in all relevant respects and the VE's testimony given in response thereto cannot be used to carry defendant's burden to prove the existence of a significant number of jobs that plaintiff is capable of performing.

The ALJ's RFC evaluation is flawed for the following reasons. First, the ALJ failed

---

[2] Specifically, the ALJ found that plaintiff can

> perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) but with the following limitations: She can lift 10 pounds at a time. She can occasionally lift items such as ledgers and docket files. She can sit for six hours and stand or walk for two hours. She can never climb ladders, ropes, or scaffolds, kneel, or crawl. She can occasionally climb stairs and ramps, balance, stoop, and crouch. She can frequently reach, handle, and finger. For every one hour of sitting, standing, or walking, she must be able to change position. She must use a cane when walking. She can never perform commercial driving or work around hazards such as unprotected heights or unguarded/uncovered moving machinery. She can carry out simple instructions. She can tolerate routine changes in the workplace. She can never work at a production rate pace that requires hourly quotas.

(Tr. 33).

to consider the side effects of plaintiff's medications. The record indicates that plaintiff takes, or at various times has taken, a large number of medications, including Amitriptyline, Anaprox, Brintellix, Lasix, Lopressor, Tylenol 3, Pioglitazone, Ergocalciferol, Carvedilol, Metformin, Amiloride HCL, Hydralazine, Omeprazole, Paroxetine, Xarelto, Klonopin, Clonidine, Acetaminophen-Hydrocodone, Ambien, Pantoprozole (Protonix), Prozac, Lovenox, Lyrica, Coreg, Qvar, Stiolto, Norco, Pregabalin, Sertraline, Alprazolam, Bismuth subsalicylate, and Zoloft (Tr. 216, 274-75, 277, 284, 308, 316, 421, 429, 561, 643-44, 722), several of which have known side effects. At the hearing, plaintiff testified that some of her medications make her feel drowsy, tired, and disoriented (Tr. 52-54). On her function report, plaintiff indicated that some of her medications make her feel sleepy and lightheaded (Tr. 239).

The ALJ's failure to make any findings as to this issue is an error requiring remand, as the Sixth Circuit has held that the ALJ must evaluate "[t]he type, dosage, effectiveness, and side effects of any medication" as part of the process of determining the extent to which side effects impair a claimant's capacity to work.[3] *Keeton v. Comm'r of Soc. Sec.*, 583 F. App'x 515, 532 (6th Cir. 2014) (quoting 20 C.F.R. § 416.929(c)(3)(i)-(vi)). Further, hypothetical questions to vocational experts must account for medication side effects. *See White v. Comm'r of Soc. Sec.*, 312 F. App'x 779, 789-90 (6th Cir. 2009). On remand, the ALJ must determine which medications plaintiff was taking during the relevant time period; make findings as to the nature and severity of these

---

[3] The ALJ's only mention of this issue is his statement that "[t]he combination of the claimant's obstructive sleep apnea and side effects from medication limit her to no commercial driving or work around hazards such as unprotected heights or unguarded/uncovered moving machinery" (Tr. 35). The ALJ did not acknowledge any awareness of plaintiff's many medications or address her testimony and statements concerning medication side effects. Nor did he make any of the findings required by *Keeton*.

4

medications' side effects, if any; and revise his RFC assessment and his hypothetical question(s) to the VE, as appropriate.

Second, the RFC evaluation is flawed because the ALJ neglected to make required findings concerning the effect, if any, of plaintiff's obesity on her other impairments. Defendant's regulations consider a person with a body-mass index ("BMI") of 30 or higher to be obese. *See* SSR 02-1p. The ALJ must consider a disability claimant's obesity at all steps of the sequential process. *See id.,* Policy Interpretation ¶ 3. Further,

> [o]besity is a medically determinable impairment that is often associated with disturbance of the musculoskeletal system, and disturbance of this system can be a major cause of disability in individuals with obesity. The combined effects of obesity with musculoskeletal impairments can be greater than the effects of each of the impairments considered separately. Therefore, when determining whether an individual with obesity has a listing-level impairment or combination of impairments, and when assessing a claim at other steps of the sequential evaluation process, including when assessing an individual's residual functional capacity, adjudicators *must consider* any additional and cumulative effects of obesity.

20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.00Q (emphasis added).

In the present case, the ALJ noted that plaintiff's BMI is "in the range of 43 to 44" (Tr. 35) and he included obesity among her severe impairments (Tr. 30).[4] The ALJ mentioned SSR 02-1p and asserted that he "considered any added or accumulative effects the claimant's obesity played on her ability to function, and to perform routine movement and necessary physical activity within the work environment" (Tr. 33, 35). Nonetheless, aside from this statement there is no

---

[4] The Court notes that the medical records repeatedly characterize plaintiff's obesity as "morbid" (e.g., Tr. 564, 660-61, 663, 666, 722). The Center for Disease Control and Prevention classifies persons with a BMI of 40 or higher as "extremely" or "severely" obese. *See* https://www.cdc.gov/obesity/adult/defining.html (last visited Apr. 2, 2018).

5

indication in the ALJ's decision as to how he considered plaintiff's obesity in assessing her RFC. On remand, the ALJ must clearly articulate his findings as to the effect, if any, of plaintiff's obesity on her other impairments and whether it affects her ability to sit, stand, or walk. The ALJ must include any such findings in reevaluating plaintiff's RFC and, as appropriate, in framing revised hypothetical question(s) to the VE.

Third, the ALJ's RFC assessment is flawed because his finding that plaintiff must use a cane only when walking (Tr. 35) is not supported by substantial evidence. Plaintiff testified that she uses the cane not only while walking but also while standing because "[i]t helps with balance" (Tr. 62, 66). The ALJ noted this testimony (Tr. 34), but he did not reject it or even directly address it. The ALJ repeatedly quoted from Exhibit 3F/3 (Tr. 32, first para.; Tr. 34, fourth para.; Tr. 36, third para.; Tr. 37, second and third paras.; and Tr. 39, first para.), where Dr. Brasseur, who examined plaintiff in February 2016 at defendant's request, stated that plaintiff "favors the left foot when ambulating but does not use a cane or walker" (Tr. 421). The ALJ offers no explanation as to why he credited plaintiff's testimony that she uses a cane while walking but not her testimony that she also uses a cane while standing. The issue is important because while the ALJ asked the VE to assume a person who needs to change position every hour, he did not ask her to include the hypothetical person's need to use a cane while standing, which presumably would limit such a person to using one hand while in that position. On remand, the ALJ must determine whether plaintiff needs a cane while standing and, as appropriate, revise his RFC assessment and his hypothetical question(s) to the VE.

Fourth, the ALJ's RFC assessment is flawed because his finding that plaintiff can "frequently reach, handle, and finger" is not supported by substantial evidence. Plaintiff testified

6

that she has pain and numbness in her hands (Tr. 55, 63-64). The ALJ noted this testimony (Tr. 34) but he did not reject it or even directly address it. The ALJ did acknowledge that plaintiff has "positive Tinel's and Phalen's sign in the right hand" (Tr. 37), an apparent reference to Dr. Brasseur's finding of "positive Tinel's and Phalen's sign for carpal tunnel in the right hand" (Tr. 421), but the ALJ made no findings as to the severity of this impairment. The ALJ's finding, as part of his RFC assessment and his hypothetical question to the VE, that plaintiff "can frequently reach, handle, and finger" (Tr. 33, 72) is unexplained. On remand, the ALJ must reevaluate all of the evidence concerning the pain and numbness in plaintiff's hands and, as appropriate, adjust his RFC assessment and his hypothetical question(s) to the VE.

Fifth, the ALJ's RFC assessment is flawed because substantial evidence does not support his finding that plaintiff "can sit for six hours and stand or walk for two hours" during an eight-hour work day (Tr. 33). Plaintiff testified that she can sit for only 15 to 20 minutes before her "legs will swell" (Tr. 60), and the ALJ did not reject or directly address this testimony. The edema in plaintiff's legs is well documented,[5] and the ALJ did not adequately explain why he dismissed this impairment as non-severe (Tr. 31, first para.). Nor did he offer any reason for finding that

---

[5] In November 2015, plaintiff was hospitalized for three days after appearing at the ER "with leg swelling and pain" (Tr. 566). Plaintiff reported that "her legs are heavy and difficult to control, they have a shaky and numbness feeling, which has caused her to have multiple falls recently" (Tr. 666). In December 2015, plaintiff was hospitalized again for three days with complaints of nausea, abdominal pain, vomiting, and leg pain (Tr. 663). Edema was noted in both of her legs (Tr. 664). In March 2016, plaintiff sought ER treatment for "bilateral lower extremity swelling, shortness of breath" (Tr. 514). She was diagnosed with "[d]ependent edema" (Tr. 522). Later the same month, she again sought ER treatment for "increased swelling in her bilateral legs and palpitations" (Tr. 496). The examining physician noted that plaintiff had "2+ -3+ pitting and tender edema to bilateral lower extremities with positive tenderness bilaterally" (Tr. 511). She was diagnosed with "[a]cute painful bilateral peripheral edema" and treated with "fentanyl and later Dilaudid with some relief in her symptoms" (Tr. 512).

plaintiff can sit for up to six hours in an eight-hour work day despite this documented medical problem and despite plaintiff's testimony that sitting exacerbates the swelling.

Similarly, the ALJ neglected to make any findings regarding the severity of the abnormalities in plaintiff's feet, despite noting the medical evidence that plaintiff has bone spurs in both of her heels and "Charcot joint in the bilateral feet" (Tr. 34). Plaintiff testified that she can "move" for 15-20 minutes before needing to sit due to pain in her knees and feet (Tr. 59, 67). The ALJ limited plaintiff to sedentary work because of her "degenerative joint disease, pancreatitis, obesity, and obstructive sleep apnea" (Tr. 35), but he made no allowance for her bone spurs or Charcot joints, and he offered no reason for finding that plaintiff can stand or walk or for two hours in an eight-hour work day despite these documented medical problems.

On remand, the ALJ must reconsider all of the evidence concerning the edema in plaintiff's legs and the impairments in her feet, and, as appropriate, adjust his RFC assessment and his hypothetical question(s) to the VE. In any event, the ALJ must explain the basis for his finding that plaintiff can meet the sitting, walking, and standing requirements of sedentary work despite these and her other impairments.

Finally, remand is required in this matter because the ALJ neglected to consider whether plaintiff's repeated hospitalizations may have prevented her from working during any 12-month period since the alleged disability onset date. The VE testified that a person who misses two days of work per month is unemployable (Tr. 74). The ALJ noted that plaintiff "sought emergency room treatment for her abdominal pain on multiple occasions" (Tr. 34), but he did not list all of these occasions (and hospitalizations) or make any findings as to whether they show a level of absenteeism that would prevent plaintiff from maintaining full time employment. The records

indicate that plaintiff was hospitalized three times in November 2015 (Tr. 378, 728; 542, 550; 534), once in December 2015 (Tr. 525, 696-97), twice in March 2016 (Tr. 513; 495), once in May 2016 (Tr. 479, 676, 725), once in June 2016 (Tr. 470, 722), and once in November 2016 (Tr. 439). On remand, the ALJ must determine how often, and for how long, plaintiff has been in the hospital since the alleged onset date and obtain VE testimony as to whether she could have worked despite these absences.

For these reasons, the Court concludes that the ALJ's decision in this matter is not supported by substantial evidence. Remanding the matter for an award of benefits would not be appropriate at this time because the record, in its current state, is not such that "proof of disability is overwhelming or . . . proof of disability is strong and evidence to the contrary is lacking." *Faucher v. Sec'y of Health and Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994). Rather, the matter must be remanded so that the record may be further developed to address the deficiencies noted above. Accordingly,

IT IS ORDERED that defendant's motion for summary judgment is denied.

IT IS FURTHER ORDERED that this matter is hereby remanded for further proceedings to address the issues identified in this opinion.

Dated: April 2, 2018                   s/Bernard A. Friedman
Detroit, Michigan                    BERNARD A. FRIEDMAN
                                                 SENIOR UNITED STATES DISTRICT JUDGE

## **CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on April 2, 2018.

s/Johnetta M. Curry-Williams
Case Manager
